IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF WYOMING

FILED
U.S. DISTRICT COURT
DISTRICT OF WYOMING

2019 JUN 11  PM 4 08

STEPHAN HARRIS, CLERK
CHEYENNE

SINCLAIR WYOMING REFINERY
COMPANY, a Wyoming corporation,

Plaintiff,

v.

A&B Builders, LTD., a Texas limited
partnership; MATRIX ENGINEERING,
LTD., a Texas limited partnership;
HOWE-BAKER ENGINEERS, LTD., a
Texas limited partnership; APPLIED
CONTROL EQUIPMENT, LLC, a
dissolved Colorado limited liability
company nka APPLIED CONTROL
EQUIPMENT, LLLP, a Colorado limited
liability limited partnership;
INSTRUMENT & VALVE SERVICES
COMPANY, a Delaware company;
FISHER SERVICE CO. dba FISHER
CONTROLS INTERNATIONAL, INC., a
Delaware corporation nka FISHER
CONTROLS INTERNATIONAL, LLC, a
Delaware limited liability company; and
EMERSON PROCESS MANAGEMENT,
LLLP, a Delaware limited liability limited
partnership,

Defendants.

Case No.15-CV-91-ABJ

---

**ORDER GRANTING HBE'S MOTION FOR SUMMARY JUDGMENT TO
ENFORCE THE CONTRACTUAL LIMITATIONS PERIOD**

---

1

THIS MATTER comes before the Court on Defendant and Counterclaimant Howe-Baker Engineers, Ltd.'s ("HBE") *Mo. for Summ. J. to Enforce the Contractual Limitations Period* (*"Mo. for Summ. J."*), ECF No. 312. Plaintiff Sinclair Refining Company ("Sinclair") filed a *Mem. Br. in Opp'n. to Howe-Baker Engineers, LTD.'s Mo. for Summ. J. to Enforce the Contractual Limitations Period* (*"Br. in Opp'n"*), ECF No. 369. HBE countered with a *Reply Br. in Supp. of Mo. for Summ. J. to Enforce the Contractual Limitations Period* (*"Reply Br."*), ECF No. 408. Having considered all the filings, the applicable law, and being otherwise fully advised, the court FINDS and ORDERS as follows:

## I.    BACKGROUND

The overarching question this Court must resolve is who is liable for a $117 million explosion and fire at a Sinclair refinery in Sinclair, Wyoming. HBE, an engineering business that Sinclair contracted to perform services in this matter, argues that it cannot be held liable after careful consideration of its contract with Sinclair. Ex. 2, ECF No. 102 ("EPC Contract").

Sinclair and HBE contemplated that the EPC Contract would govern the "dismantling of [a] . . . hydrocracker unit in California, transportation of that hydrocracker unit [to] Sinclair, Wyoming, . . . providing . . . detailed design and engineering specifications so that [the] hydrocracker unit could become a hydrotreater unit, and . . . the construction, installation and integration of that unit into [Sinclair's] existing refinery . . . ." *Br. in Opp'n* Ex. 1, ¶ 1, ECF No. 369. This work "was ultimately completed in 2006." *Id.*

2

Repurposing the hydrocracker unit required replacement or refurbishment of a control valve (FV-10). *Mo. for Summ. J.* 2, ECF No. 312. Although the design specifications called for the valve to be composed of stainless steel, Sinclair purchased a carbon steel valve (FV-241), and "provided this owner-purchased equipment to the CB&I Parties for [replacement and] installation." *Id.* at 2; *see also Br. in Opp'n to Second Mo. for Summ. J.*15, ECF No. 373. It was this FV-241 valve that "instantaneously and catastrophically fractured" as a result of a high temperature hydrogen attack. *Br. in Opp'n* 2, ECF No. 369. The high temperature hydrogen attack occurred on September 27, 2013. *Mo. for Summ. J.* 3, ECF No. 312; *Br. in Opp'n* 2, ECF No. 369. Thus, at least six years and nine months passed between when HBE completed repurposing the hydrocracker and high temperature hydrogen attack.

Since the EPC Contract is over three-hundred pages, it should come as no surprise that it includes provisions dealing with HBE's liability in the event a calamity involving # 4 HDS Unit at the Sinclair refinery. Pertinent provisions include:

## 1.0 GUARANTEES

1.1 Design and Engineering Services: Contractor guarantees Sinclair that it will perform its design and engineering services in accordance with the standards of care and diligence normally practiced by recognized engineering firms in performing services of a similar nature for the petroleum refining industry in existence at the time of the performance of work. Without limitation of any other rights or remedies of Sinclair, if it is shown that those standards have not been met within the period set forth below, Contractor shall, **upon receipt within the warranty period of written notice of such failure, promptly furnish, at no cost to Sinclair, such corrective home office design and engineering services as may be necessary within the original scope of its design and engineering services, to remedy such deficiency.**

3

1.2 Fabricated Equipment and Field Construction: Contractor guarantees Sinclair that equipment provided by Contractor which is of Contractor's manufacture, and field construction work performed by Contractor or subcontractors shall comply strictly with the provisions of this Contract and all specifications, drawings and standards referred to in this Contract, **and that the Work shall be free from defects in materials and workmanship** . . .Without limitation of any other rights or remedies of Sinclair, if any defect in violation of the foregoing guarantee arises within the period set forth below, **Contractor shall, upon receipt within the warranty period of written notice of such defect, promptly furnish, at no cost to Sinclair, labor, equipment and materials necessary to correct, repair or replace, at Contractor's option, such defective equipment or materials** and cause the Work to comply fully within the foregoing guarantees, up to the aggregate limit of Contractor's liability as described herein . . . .

1.4 Warranty Period: Contractor's guarantees set forth in Sections 1.1, 1.2 and 1.3 **shall extend for twelve (12) months from Mechanical Completion.**[1] Any period wherein the Work is not available for use and/or is limited in use due to defects in materials, workmanship or engineering furnished by Contractor shall extend the guarantee period by an equal period of time.

1.7 LIMITATIONS: **ALL WARRANTIES** OF ANY NATURE MADE BY CONTRACTOR IN CONNECTION WITH THE WORK **ARE LIMITED TO THOSE SET FORTH IN THIS ARTICLE 1.** CONTRACTOR DISCLAIMS ALL STATUTORY, ORAL, EXPRESSED OR IMPLIED WARRANTIES, INCLUDING WARRANTIES OF MERCHANTIBILITY OR FITNESS FOR A PARTICULAR PURPOSE, AND WARRANTIES ARISING FROM COURSE OF DEALING OR TRADE USAGE. SINCLAIR SHALL ALLOW CONTRACTOR TO PERFORM TESTS AND/OR REMEDIAL SERVICES AT A MUTUALLY AGREEABLE TIME. FAILURE BY SINCLAIR TO ALLOW CONTRACTOR TO PERFORM TESTS AND/OR REMEDIAL SERVICES WITHIN THE

---

[1] "Mechanical Completion" is define as "notification by the Contractor and acceptance by Sinclair via checking and inspection of equipment confirming appropriate construction and installation of materials in accordance with drawings and specifications that the unit is ready for commissioning in a safe manner, in compliance with project requirements and Attachment J -Construction/Mechanical Completion." EPC Contract at 5. Sinclair does not dispute HBE's assertion that Mechanical Completion was achieved in 2006. *See Br. in Opp'n*, ECF No. 369.

UNITS NORMAL TURNAROUND CYCLE AFTER WRITTEN NOTIFICATION OF DEFECT SHALL RELIEVE CONTRACTOR OF ITS WARRANTY OF THE WORK RELATIVE TO SUCH TEST OR SERVICE. THE REMEDIES OF SINCLAIR SET FORTH IN **THIS ARTICLE 1 CONSTITUTE SINCLAIR'S SOLE AND EXCLUSIVE RECOURSE WITH RESPECT TO THE QUALITY OF THE WORK, AND SINCLAIR SHALL RELEASE CONTRACTOR FROM ANY LIABILITY IN EXCESS THEREOF, REGARDLESS OF CONTRACTOR'S FAULT, NEGLIGENCE OR STRICT LIABILITY.** SUCH EXCLUSIVE REMEDIES SHALL NOT BE DEEMED TO HAVE FAILED FOR THEIR ESSENTIAL PURPOSE SO LONG AS CONTRACTOR IS WILLING AND ABLE TO REPAIR OR REPLACE THE DEFECTIVE WORK AS PRESCRIBED ABOVE. **CONTRACTOR SHALL HAVE NO LIABILITY UNLESS NOTIFIED IN WRITING OF A DEFECT WITHIN 12 MONTHS OF MECHANICAL COMPLETION CONSISTENT WITH THE CONDIITONS STATED IN ARTICLE 1.0.** CONTRACTOR SHALL BE GIVEN THE OPPORTUNITY TO INSPECT AND CORRECT, REPAIR OR REPLACE SUCH DEFECTIVE WORK AT A TIME OF SINCLAIR'S CHOOSING AT OR PRIOR TO THE NEXT SCHEDULED TURNAROUND FOR THE UNIT. SHOULD CONTRACTOR NOT AGREE WITH PROPOSED TIMING TO REPAIR OR REPLACE SUCH DEFECTIVE WORK, CONTRACTOR WILL NOTIFY SINCLAIR OF INTENT TO FOLLOW PART II, ARTICLE 3.0 'PRICING FOR CHANGES' AND [ID]ENTIFY THE COSTS TO REPAIR OR REPLACE THE DEFECTIVE WORK. CONSISTENT WITH THE ARTICLE, AGREEMENT WILL BE REACHED BY SINCLAIR AND CONTRACTOR ON THE COST. THE AGREED UPON COST WILL BE PAID TO SINCLAIR BY THE CONTRACTOR, RELEASING CONTRACTOR OR ANY CLAIMS FOR SAID REPAIR OR REPLACEMENT OF DEFECTIVE WORK.

EPC Contract at 297–99 (emphasis added). The question now before the Court is whether these provisions bar Sinclair's breach of contract claim against HBE.[2]

---

[2] Breach of contract is Sinclair's first claim for relief. *Second Am. Compl.* 8, ECF No. 168.

II.   STANDARD OF REVIEW

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A dispute of fact is genuine if a reasonable juror could resolve the disputed fact in favor of either side. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute of fact is material if under the substantive law it is essential to the proper disposition of the claim. *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998). When the Court considers the evidence presented by the parties, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in the non-movant's favor." *Anderson*, 477 U.S. at 255.

The party moving for summary judgment has the burden of establishing the nonexistence of a genuine dispute of material fact. *Lynch v. Barrett*, 703 F.3d 1153, 1158 (10th Cir. 2013). The moving party can satisfy this burden by either (1) offering affirmative evidence that negates an essential element of the nonmoving party's claim, or (2) demonstrating that the nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's claim. *See* FED. R. CIV. P. 56(c)(1)(A)–(B).

Once the moving party satisfies this initial burden, the nonmoving party must support its contention that a genuine dispute of material fact exists either by (1) citing to particular materials in the record, or (2) showing that the materials cited by the moving party do not establish the absence of a genuine dispute. *See id.* The nonmoving party must "do more than simply show that there is some metaphysical doubt as to material facts." *Matsushita Elec.*

*Indus. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rather, to survive a summary judgment motion, the nonmoving party must "make a showing sufficient to establish the existence of [every] element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Further, when opposing summary judgment, the nonmoving party cannot rest on allegations or denials in the pleadings but must set forth specific facts showing that there is a genuine dispute of material fact for trial. *See Travis v. Park City Mun. Corp.*, 565 F.3d 1252, 1258 (10th Cir. 2009).

When considering a motion for summary judgment, the court's role is not to weigh the evidence and decide the truth of the matter, but rather to determine whether a genuine dispute of material fact exists for trial. *Anderson*, 477 U.S. at 249. Credibility determinations are the province of the fact-finder, not the court. *Id.* at 255.

III.     <u>RULES OF CONTRACT INTERPRETATION, EXCLUSIVE REMEDY PROVISIONS, AND CONTRACTUAL LIMITATIONS CLAUSES</u>[3]

Wyoming courts interpret contracts to effectuate the plain language contained therein. *P & N Investments, LLC v. Frontier Mall Assocs., LP*, 2017 WY 62, ¶ 10, 395 P.3d 1101, 1104 (Wyo. 2017) (citing *Comet Energy Servs., LLC v. Powder River Oil & Gas Ventures, LLC*, 2008 WY 69, ¶ 6, 185 P.3d 1259, 1261 (Wyo. 2008) (*Comet I*)). When interpreting a contract, courts "avoid interpreting a contract so as to find inconsistent provisions or so as to

---

[3] The Parties' do not dispute that Wyoming law applies to the EPC Contract.

render any provision meaningless." *Pope v. Rosenberg*, 2015 WY 142, ¶ 20, 361 P.3d 824, 830 (Wyo. 2015) (quoting *Wallop Canyon Ranch, LLC v. Goodwyn*, 2015 WY 81, ¶ 35, 351 P.3d 943, 953 (Wyo. 2015)). Unless a contract's language is unclear or ambiguous, courts interpret and construct contracts as a matter of law. *Hunter v. Reece*, 2011 WY 97, ¶ 18, 253 P.3d 497, 502 (Wyo. 2011) (quoting *Thorkildsen v. Belden*, 2011 WY 26, ¶ 8, 247 P.3d 60, 62 (Wyo. 2011). Ambiguous language is that language marred by obscurity, "indefiniteness of expression," or the presence of "a double meaning." *Amoco Prod. Co. v. Stauffer Chem. Co. of Wyo.*, 612 P.2d 463, 465 (Wyo. 1980) (citation omitted); *see also Bear Peak Res., LLC v. Peak Powder River Res., LLC*, 2017 WY 124, ¶ 59, 403 P.3d 1033, 1051 (Wyo. 2017), *reh'g denied* (Nov. 7, 2017) (explaining that extrinsic evidence cannot be used to formulate an ambiguity).

There is typically nothing ambiguous about an exclusive remedy clause. Such provisions alter the general rule that "[r]emedies mentioned in a contract generally are not exclusive remedies." *See Walters v. Michel*, 745 P.2d 913, 915 (Wyo. 1987). For example, in *Dewey v. Wentland* the Wyoming Supreme Court held that "the remedies of damages and specific performance" were possibly available to a seller where the agreement at issue did not include an exclusive remedies clause but did include a liquidated damages clause. 2002 WY 2, ¶ 41, 38 P.3d 402, 417 (Wyo. 2002). But where the contract does include an exclusive remedies clause and restricts the time in which that exclusive remedy may be brought, a party's failure to assert their exclusive, bargained-for remedy obstructs its lawsuit. *See Heimeshoff v. Hartford Life & Acc. Ins. Co.*, 571 U.S. 99, 107 (2013) (explaining that

8

statutes of limitations are simply "default rule[s]" and that parties are free "to choose a shorter [but reasonable] limitations period.") (citing *Riddlesbarger v. Hartford Ins. Co.*, 7 Wall. 386, 390 (1869)); *Holden Farms, Inc. v. Hog Slat, Inc.*, 347 F.3d 1055, 1060 (8th Cir. 2003) (holding that a one-year warranty period regarding the quality of "materials and equipment" and work subject to the contract was reasonable and barred a breach of contract action filed after the warranty period).

When analyzing the implications of bargained-for contractual limitations provisions, Wyoming courts must consider Wyoming's background of providing robust endorsement for the freedom of contract. *Sinclair Oil Corp. v. Columbia Cas. Co.*, 682 P.2d 975, 978–79 (Wyo. 1984). The reality that the Wyoming Supreme Court often respects forum selection and choice of law provisions signals Wyoming's attitude towards holding parties to their bargain. *Nuhome Investments, LLC v. Weller*, 2003 WY 171, ¶ 9, 81 P.3d 940, 945 (Wyo. 2003) (citations omitted). In the same vein, the Wyoming Supreme Court has held "that contractual periods of limitation are prima facie valid and will be enforced absent a demonstration by the party opposing enforcement that the clause is unreasonable or based upon fraud or unequal bargaining positions." *Id.*, ¶ 16, 81 P.3d at 947 (citing *Durdahl v. Nat'l Safety Assocs., Inc.*, 988 P.2d 525, 527–28 (Wyo. 1999)). The current issue is whether the Court should interpret the EPC Contract in a manner where its exclusive remedy provision and contractual limitation clause collaborate to bar Sinclair's breach of contract claim against HBE.

9

## IV.   <u>LEGAL ANALYSIS</u>

HBE admits that Articles 1.1 and 1.2 guaranteed that HBE and its subcontractors would provide "services in accordance with the standards of care and diligence normally practiced by recognized engineering firms in performing services of a similar nature" and "field construction work . . . [that] compl[ied] strictly with the provisions of this Contract, and all specifications, drawings, and standards referred to in this Contract, and that the Work [would] be free from defects in materials and workmanship." However, HBE argues that these guarantees were not unending as they are limited by the warranty period of Article 1.4: "Contractor's guarantees set forth in Section 1.1, 1.2 and 1.3 shall extend for twelve (12) months from Mechanical Completion." Since Sinclair concedes that HBE finished repurposing # 4 HDS Unit in 2006, HBE argues that Sinclair cannot now assert claims under those guarantees for an explosion and fire that occurred in 2013. Such claims are beyond the one-year warranty period.

HBE further argues that Sinclair cannot bypass this predicament by looking for another avenue to sustain a different claim—Sinclair agreed the "REMEDIES OF SINCLAIR SET FORTH IN THIS ARTICLE 1 CONSTITUTE SINCLAIR'S SOLE AND EXCLUSIVE RECOURSE WITH RESPECT TO THE QUALITY OF THE WORK . . . ." EPC Contract Article 1.7. Additionally, HBE argues that Article 1.7 saves it from liability because Sinclair did not provide written notice "OF A DEFECT WITHIN 12 MONTHS OF MECHNICAL COMPLETION CONSISTENT WITH THE CONDITIONS STATED IN ARTICLE 1.0." *Id.*

10

In response, Sinclair principally argues that 1) HBE waived it contractual limitations defense; 2) the EPC Contract only addresses breach of warranty claims and Sinclair's claim is a breach of contract claim; 3) the exclusive remedy provision of Article 1.7 does operate in conjunction with Article 1.4 to bar Sinclair's breach of contract claim against HBE. The Court will consider each of these defenses in turn.

1) Waiver

The initial issue is whether HBE waived its contractual limitations defense by 1) failing to include it in its Answers (ECF Nos. 24, 104, and 236), to all three of Sinclair's Complaints (ECF Nos. 1, 91, and 168) and 2) not referencing it in its statute of limitations summary judgment argument (ECF No. 82). Without citing any pertinent authority, Sinclair alleges that these two details evidence HBE's waiver of the contractual limitations defense.

Although the Tenth Circuit appears not to have weighed in, it is evident that most courts hold that, in the absence of prejudice and where the party independently raised a statute of limitations defense, the failure to advance a contractual limitations defense in an answer does not constitute a waiver of it for purposes of summary judgment arguments. *E.g., Han v. Mobil Oil Corp.*, 73 F.3d 872, 878 (9th Cir. 1995) ("hold[ing] that an affirmative defense based upon a contractual limitations period may be raised for the first time on summary judgment if no prejudice is caused to the nonmoving party."); *Fin. Timing Publications, Inc. v. Compugraphic Corp.*, 893 F.2d 936, 945 n.9 (8th Cir. 1990) ("Although the answer alleged that the complaint was barred by the 'applicable statute of limitations,' the plaintiff contends that because the answer did not specifically refer to the contractual

11

limitations provision, Compugraphic cannot rely on this provision for its defense. We disagree."); *Ray v. Fedex Corp. Servs., Inc.*, 668 F. Supp. 2d 1063, 1066 (W.D. Tenn. 2009) (explaining that "a 'contractual' limitations defense is not one of the affirmative defenses enumerated in Rule 8(c), and thus, is not subject to waiver under the rule."); *see also Core Commc'ns, Inc. v. Verizon Maryland, Inc.*, No. 1:02-CV-3180-JFM, 2012 WL 3292899, at *8 n.6 (D. Md. Aug. 10, 2012), *aff'd sub nom. Core Commc'ns, Inc. v. Verizon Maryland LLC*, 744 F.3d 310 (4th Cir. 2014) (distinguishing a statute of limitations affirmative defense from a contractual limitations defense because the former relies on an "extrinsic" provision while the latter relies on the contract in controversy). *But see S. Wallace Edwards & Sons, Inc. v. Cincinnati Ins. Co.*, 353 F.3d 367, 372–73 (4th Cir. 2003). While neither party cited a Tenth Circuit case to support their position, there is a slip copy of a district court decision from New Mexico where the court barred a contractual limitations defense because the Defendant failed to plead it in its answer. *Johnson v. Baxter Healthcare Corp., No.* CV 05-357 JH/RLP, 2006 WL 8443620, at *3 (D.N.M. Oct. 27, 2006) (slip copy). However, in *Johnson* the defendant also failed to plead a statutory limitations defense. *Id.* The court therefore found that the defendant provided "no notice that it is asserting a limitations period defense . . . ." *Id.*

Here, *Johnson* is distinguishable because HBE raised a statutory limitations period defense. This put Sinclair on notice that HBE planned to argue that some authority, whether located in legislative statutes or contractual provisions between the parties, incorporated a limitations period.

12

Additionally, Sinclair will not be prejudiced by HBE's contractual limitations defense. This motion deals entirely with Sinclair's breach of contract action against HBE. As a consequence, Sinclair presumably has knowledge of what that contract entails. Moreover, to evaluate and oppose HBE's contractual limitations defense Sinclair did not need to consider additional facts or turn to outside-the-contract authority, such as a statute of limitations. Sinclair instead could discover the applicable time limitation simply by analyzing the EPC Contract. Indeed, Sinclair need only turn to Article 1.1—a provision its breach of contract claim relies on (*Second Am. Compl.* ¶ 27, ECF No. 168)—to realize that this litigation relates to a limitations period: "Contractor shall, upon receipt **within the warranty period** of written notice of such failure, promptly furnish, at no cost to Sinclair, such corrective home office design and engineering services as may be necessary . . . to remedy such deficiency." (emphasis added).

Finally, HBE's failure to argue the contractual limitations defense in association with its statutory limitations defense did not constitute a waiver of the contractual limitations defense. The two defenses are distinct: statutes of limitations depend on legislative determinations regarding equitable timelines for bringing relevant lawsuits; contractual limitations depend on private, bargained-for timelines for such suits. *See Order of United Commercial Travelers of Am. v. Wolfe*, 331 U.S. 586, 608 (1947). In other words, a court analyzing these two defenses must consider an entirely different source for determining the controlling law. *See Nuhome Investments, LLC*, ¶ 9, 81 P.3d at 942 n.1 (refusing to adopt the parties' classification of a contractual limitations period as a statute of limitations "because

13

the one-year time period is set by contract rather than statute . . . ."). The Court does not see why Sinclair can raise ten separate motions for summary judgment but HBE cannot raise two separate motions for summary judgment when both are based on different sources of law. Because Sinclair has presented no germane argument to the contrary, and the Court finds that the weight of authority supports HBE's position, the Court concludes that HBE did not waive its contractual limitations defense.

2) <u>Breach of Warranty v. Breach of Contract</u>

The next issue before the Court is whether Articles 1.4 and 1.7 apply to Sinclair's breach of contract claim. Sinclair argues that they do not because those provisions relate only to warranty claims, "which claims are based on defects in performance rather than whether or not performance occurred at all. *Tavarez v. Horstman*, 542 P.2d 1275, 1279 (Wyo. 1975)." *Br. in Opp'n* 7–8, ECF No. 369.[4] Since Sinclair classifies its claim as a breach of contract claim, Sinclair contends that Articles 1.4 and 1.7 are inapplicable.

But Sinclair's breach of contract claim largely centers on HBE's alleged "defects in performance." For instance, Sinclair states,

---

[4] Sinclair's citation to *Tavarez* is perplexing. On page 1279 of that opinion, the Wyoming Supreme Court discussed the boom in housing construction after World War II. The court stated that housing construction had become more specialized and that "ordinary home buyer[s]" were in no position "to discover defects lurking in the plumbing, the electrical writing, [or] the structure itself, all of which is usually covered up and not open for inspection." *Id.* After thoughtful reflection, the court determined that the doctrine of caveat emptor should be deadened in the context of a home acquisition. *Id.* The court finished the page by discussing a Colorado case justifying its holding. *Id.* Sinclair's citation does not support Sinclair's distinction between breach of warranty and breach of contract claims.

> Howe-Baker, A&B and Matrix were actively involved in the supervision, [1] *dismantling* and [2] *transportation* of the . . . hydrocracker unit to Sinclair, Wyoming, the [3] *detailed design and engineering* of that unit to become a hydrotreater unit, and the [4] *construction, installation and integration* of that hydrocracker unit into Sinclair's existing refinery . . . .

*Second Am. Compl.* ¶ 18, ECF No. 168. Sinclair further states that it entered into the EPC Contract with HBE

> for the [1] *dismantling* of the . . . hydrocracker unit in California, [2] *transportation* of that hydrocracker unit to Sinclair, Wyoming, for the providing of [3] *detailed design and engineering* specifications so that hydrocracker unit could become a hydrotreater unit, and for the [4] *construction, installation and integration* of that unit . . . .

*Id.* Therefore, Sinclair's *Second Am. Compl.* points to at least four instances where HBE was "actively involved" (i.e., performed) under the EPC Contract. And it appears that HBE performed in the area of most concern to Sinclair: Sinclair classifies its "claim against Howe-Baker" as a "breach of contract *construction defect claim*" (*Brief in Opp'n* 2, ECF No. 369); yet, as stated earlier, Sinclair alleges that HBE was "actively involved in . . . the *construction* . . . of [the] hydrocracker unit." *Second Am. Compl.* ¶ 18, ECF No. 168. It is incongruous for Sinclair to argue that HBE was "actively involved" with construction work while not performing "at all" under the EPC Contract.

Part of the confusion likely stems from mismatch of warranty claims to services contract. *See, e.g., Kemper Architects, P.C. v. McFall, Konkel & Kimball Consulting Engineers, Inc.*, 843 P.2d 1178, 1186 (Wyo. 1992); *Sw. Bell Tel. Co. v. FDP Corp.*, 811 S.W.2d 572, 574–75 (Tex. 1991) ("Although it is well-established that express warranties are enforced in service transactions, *see Hawkins v. McGee*, 84 N.H. 114, 146 A. 641 (1929),

15

warranty law has primarily developed in the context of the sale of goods."). Consideration of *Hawkins* will shine a light on this issue. There, a doctor guaranteed "to make [a boy's] hand a hundred per cent perfect . . . or a hundred per cent good . . ." *Hawkins* 146 A. at 643. The court found that these words created an express warranty. *Id.* When the boy's hand was not "a hundred per cent perfect" after the surgery, the court concluded "that the true measure of the plaintiff's damage" in the action was "the difference between the value to him of a perfect hand . . . and the value of his hand in its present condition, including" consequential damages. *Id.* at 644. (citation committed). Therefore, the doctor's breach was not that he failed to perform the surgery, but that he did not obtain the promised results.

Likewise, here, Sinclair's "breach of contract construction defect claim" is not that HBE did not perform construction work pursuant to the EPC Contract, but that HBE's construction work was not compliant with the promised standard. This conclusion is evident by merely looking at Sinclair's *Second Am. Compl.* Sinclair argues that HBE breached the following provision of the EPC Contract: "Contractor shall provide competent and sufficient professional engineering services, according to industry standards, are necessary to ensure satisfactory completion of Work. (EPC Contract, Part I, Art. 1.15)." This provision creates an express warranty that HBE's engineering services will comply with a certain standard. Sinclair says that HBE's engineering services were not to that standard. Accordingly, the Court concludes that Sinclair's "breach of contract construction defect claim" encompasses a warranty claim. As a result, the Court finds that Sinclair is incorrect when it asserts that it "has not made a claim for breach of warranty." *Br. in Opp'n* 8, ECF No. 369. The Court

further concludes that "[Article] 1.0 of the EPC Contract," which "addressed repair or replacement **warranty claims**," applies to Sinclair's breach of contract claim against HBE. *Id.* at 9 (emphasis added).

3) Consequences of Articles 1.4 and 1.7

Having determined that Sinclair's breach of contract claim includes a breach of warranty claim, the Court must now determine the effect of Articles 1.1, 1.2, 1.4 and 1.7. Articles 1.1 and 1.2 guarantee that HBE will, "upon receipt within the warranty period of written notice," repair deficient work or material. Article 1.4 states that HBE's guarantees "shall extend for twelve (12) months from Mechanical Completion." Pursuant to Article 1.7 of the EPC Contract,

> THE REMEDIES OF SINCLAIR SET FORTH IN THIS ARTICLE 1 CONSTITUTE SINCLAIR'S **SOLE AND EXCLUSIVE RECOURSE** WITH RESPECT TO THE QUALITY OF THE WORK, AND SINCLAIR SHALL RELEASE CONTRACTOR FROM ANY LIABILITY IN EXCESS THEREOF, REGARDLESS OF CONTRACTOR'S FAULT, NEGLIGENCE OR STRICT LIABILITY.

In sum, the plain language of the EPC Contract unambiguously provides remedies (Articles 1.1 and 1.2) concerning HBE's work, a contractual limitations period for those remedies (Article 1.4), and states that such remedies are Sinclair's exclusive remedy (Article 1.7).[5]

---

[5] The Court also concludes that Article 1.7's reference to Sinclair's "SOLE AND EXCLUSIVE RECOURSE" and "RELEASE" of HBE "REGARDLESS OF [HBE'S] FAULT, NEGLIGENCE, OR

17

Here, Sinclair attempts to bypass the EPC Contract's exclusive remedy procedure by asserting a breach of contract action outside of the period of limitations. But "contractual periods of limitation are prima facie valid and will be enforced absent a demonstration by the party opposing enforcement that the clause is unreasonable or based upon fraud or unequal bargaining positions." *Nuhome Investments, LLC*, ¶ 16, 81 P.3d at 947 (citing *Durdahl v. Nat'l Safety Assocs., Inc.*, 988 P.2d 525, 527–28 (Wyo. 1999)). Sinclair makes no attempt to satisfy its burden of showing that the limitations period is unreasonable or based upon fraud or unequal bargaining positions. Accordingly, the Court finds that Sinclair's proper remedy for HBE's alleged deficient work was to notify HBE of any deficiency within a year of Mechanical Completion in 2006, not to assert the current breach of contract action.

4) <u>Sinclair's Remaining Arguments</u>

Sinclair asserts that it can still make a claim for damages notwithstanding the EPC Contract because "[i]f Sinclair's sole and exclusive recourse was limited to repair or replacement of defective work, there would be no need for the EPC Contract to address the recovery of damages between the parties." *Br. in Opp'n* 9, ECF No. 369. The following provisions, Sinclair claims, provide support for that notion:

> 1. Section 28.1.4- Sinclair's right to seek indemnity from Howe-Baker caused by the negligence of Howe-Baker or its subcontractors up to $10,000,000

---

STRICT LIABILITY" provides further support for the notion that Article 1.7 embraces and bars claims for damages.

cumulative total liability for damage to the property of Sinclair. (Doc. 102-2; p. 314).

2. Section 50.0- An attempt to limit Howe-Baker's cumulative damage liability for contract, tort, statute, equity, fault, negligence, strict liability and breach of contract. (Doc. 102-2, p. 322).

3. Section 51.0- An attempt to exclude consequential damages between the parties. (Doc. 102-2, p. 323).

*Id.* As stated earlier, the Court interprets contracts as a whole and in a manner to avoid rendering "any provision meaningless." *Pope*, ¶ 20 361 P.3d at 830.   All of these provisions can be read in harmony with Article 1.7. Though it is true that these provisions contemplate a damage action—as opposed to a warranty action for repairs or replacement—by Sinclair against HBE, these provisions are triggered under a specific set of circumstances.

Once Sinclair notified HBE in writing of a defect in work or material within the notification period,  HBE agreed to "promptly furnish" corrective services, labor, equipment, and materials. Articles 1.1 and 1.2. If, however, HBE failed to correct such defects, then HBE failed to provide the exclusive remedy describe in Article 1.7. In the event of damages "caused by the negligence of Howe-Baker or its subcontractors," Sinclair could seek indemnification under Article 28.1.4 by virtue of HBE's failure to provide the exclusive remedy it promised to perform. And in that scenario, Articles 50.0 and 51.0 would come into play to limit HBE's potential cumulative and consequential damages liability. Consequently, the Court holds that Articles 28.1.4, 50.0, and 51.0 are in harmony with Article 1.0.

Next, Sinclair argues that Articles 1.4 and 1.7 cannot be read together to limit Sinclair's exclusive remedy to repair and replacement for defective work within one year of Mechanical Completion because of Article 2.3, which states "[n]either [Sinclair's] failure to make [an] inspection nor to discover defective workmanship, materials or equipment, nor approval of or payment to [HBE] for such Work, materials or equipment *shall prejudice the rights of Sinclair*." (emphasis added). But the exclusive remedy of Article 1.7 does not depend on Sinclair's discovery of defective work. Instead, the exclusive remedy depends on the warranty period: HBE agreed to cure defective work "if it is shown that [the] standards have not been met *within the period set forth below*"; it agreed to cure "defects in materials and workmanship . . . if any defect in violation of the foregoing guarantee arises *within the period set forth below* . . . ." Articles 1.1 and 1.2 (emphasis added). Sinclair's failure to inspect did not prejudice its rights to exercise its exclusive remedy. However, Sinclair's failure to notify HBE within the warranty period prejudiced its current attempt to seek damages outside the EPC Contract.[6]

Finally, Sinclair cites *Conda P'ship, Inc. v. M.D. Const. Co.*, 771 P.2d 920, 923 (Ct. App. 1989) for the proposition that a warranty period "for quality workmanship" only "recites the duration of a warranty, not a limitation period for lawsuits." *Conda's* holding falls directly in line with the rule that "[r]emedies mentioned in a contract generally are not exclusive remedies." *Walters*, 745 P.2d at 915. Missing from *Conda*,

---

[6] The Court also finds it persuasive that Article 2.3 relates to pre-completion inspections rather than a warranty period hinging on Mechanical Completion, as contemplated by Articles 1.1, 1.2, 1.3, and 1.4.

though, was any discussion of an exclusive remedies clause. The existence of an exclusive remedies clause has been crucial to this Court's analysis. It is the operative provision barring Sinclair's breach of contract action. Accordingly, *Conda* does not support Sinclair's argument. With no arguments left, the Court concludes that the EPC Contract's exclusive remedy clause—and Sinclair's failure to exercise that exclusive remedy—bars this current action as a matter of law.

V.   CONCLUSION

Sinclair's breach of contract action against HBE fails because it bargained it away. While HBE promised that it would provide quality work and materials, Sinclair in turn promised that it would notify HBE of any defects within a year of Mechanical Completion so that HBE could cure the defect. This remedial procedure was Sinclair's exclusive remedy under the EPC Contract. Sinclair did not follow that remedial procedure and, as a consequence, its current breach of contract claim is barred. Although Sinclair might not like those contractual terms now, the Court must enforce the EPC Contract consistent with its plain meaning and in light of Wyoming's public policy of enforcing the freedom of contract. It is therefore

**ORDERED** that HBE's *Mo. for Summ. J.*, ECF No. 312, should be and is hereby **GRANTED**;

**IT IS FURTHER ORDERED** that ECF Nos. 265, 266, 267, 268, 269, 271, 273, 274, 275, 304, 362, 387, 388, 397, 398, and 450 should be and are hereby **DENIED AS MOOT**.

Dated this _____ day of June, 2019.

Alan B. Johnson
United States District Judge

22